IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

FILED
U.S. DISTRICT COURT
MIDDLE GEORGIA

03 OCT -2  AM 11: 33

DEPUTY CLERK

| | |
|---|---|
| DENESE M. DAVIS, Individually, and as Next * <br> Friend, Parent, and Natural Guardian of * <br> BENJAMIN GUTHRIE MILTON, a Minor, * <br> * | |
| Plaintiffs, * <br> * | Civil Action |
| v. * <br> * | No. -CV- |
| HONDA MOTOR COMPANY, LTD.; * <br> AMERICAN HONDA MOTOR COMPANY; * <br> and HONDA RESEARCH & * <br> DEVELOPMENT, LTD. * <br> * | **4 :0 3 -cv- 1 4 0 ·2** |
| Defendants. * | |

## COMPLAINT FOR DAMAGES

COME NOW Denese M. Davis, individually, and as guardian of Benjamin Guthrie

Milton, minor (collectively, "Plaintiffs"), and file this Complaint for Damages against Defendants

showing this Court the following:

## INTRODUCTION

Beginning some 30 years ago, product manufacturers such as Defendant Honda started

selling in this country three wheeled "all terrain cycles" - a vehicle which is essentially a

motorized tricycle.  Manufacturers knew without being told that such vehicles were deadly

dangerous.  Over the course of the next 20 years the manufacturers, including Honda, received

plenty of evidence of the dangers - the three wheelers were killing and maiming American

citizens at an alarming rate.  By 1987, almost 1,000 Americans had been killed and 340,000

injured in three wheeler wrecks.



Despite knowledge of the dangers and of the casualties caused by its mindless pursuit of profit at any cost, Honda refused to quit selling those vehicles in this country.  Honda issued safety warnings to Japanese purchasers which Honda declined to issue to American citizens. Honda fought against efforts by others to warn citizens of the three-wheelers' dangers.  Honda deliberately marketed the three wheelers for use by children despite actual knowledge that such use was terribly dangerous.

Finally, in 1988, Honda, along with other three wheeler manufacturers, agreed in a court case to quit selling new three wheelers.  Honda refused, however, to repurchase three wheelers it had already sold.  Honda agreed to issue some "warnings," which were totally ineffective to prevent future deaths and injuries.  Anyone properly warned would never use such a vehicle. More than 10,000 Americans were injured in 1997 and more than 10,000 Americans were injured again in 2001 on three wheelers.

On May 26, 2002, nine year old Guthrie Milton of Columbus was paralyzed for life when the Honda three wheeler he was riding flipped on flat ground at low speed.  That three wheeler had been manufactured by Honda in 1984.  Although Honda had agreed in 1988 never again to sell such a vehicle in the United States, it took no action to repurchase the three wheeler that ruined Guthrie Milton's life, and made no effort to make sure that adequate warnings of the dangers reached Guthrie Milton and his parents.

## PARTIES, JURISDICTION, VENUE & SERVICE OF PROCESS

1.

Benjamin Guthrie Milton is the son of Denese M. Davis.  Benjamin Guthrie Milton resides with his mother, Denese M. Davis, in the State of Georgia with a residence address of

7857 Flat Shoals Drive, Columbus, Georgia 31904. As residents and citizens of this state and this county, Plaintiffs are subject to the jurisdiction and venue of this Court.

2.

Defendant Honda Motor Co., Ltd. ("Honda") is a foreign corporation engaged in the business of manufacturing, marketing, promoting, advertising, and selling motorcycles, automobiles, all-terrain cycles ("ATCs"), and other types of vehicles in the state of Georgia and throughout the United States and elsewhere. Personal jurisdiction against Honda is proper in this Court in accordance with O.C.G.A. § 9-10-91, Georgia's Long Arm Statute. Honda is headquartered in Tokyo, Japan and may be served with process in accordance with Article 10(a) of the Hague Convention by this Court's issuing a second original of the Summons and Complaint, and Plaintiffs forwarding the same by Registered Mail to Honda at 1-1, 2-chome, Minami-Aoyama, Minato-ku, Tokyo 107, Japan.

3.

Defendant American Honda Motor Company ("American Honda") is a foreign corporation headquartered in Gardena, California. American Honda is a wholly-owned subsidiary of Defendant Honda engaged in the business of buying and distributing products manufactured by their parent company, Honda, throughout the United States, including ATCs. American Honda is a resident of Georgia for purposes of personal jurisdiction because it transacts business in this state and because it maintains a registered agent in Georgia. American Honda may be served with process by this Court's issuing a second original of the Summons and Complaint, and Plaintiffs forwarding the same to the Sheriff of Glynn County and the Sheriff thereof delivering Summons and a copy of this Complaint to Richard A. Brown, Jr., American Honda's registered agent for service of process, #5 Glynn Avenue, Brunswick, Georgia 31520.

4.

Defendant Honda Research & Development Co., Ltd. ("Honda Research") is a foreign corporation headquartered in Saitama, Japan. Honda Research is a wholly-owned subsidiary of Defendant Honda, which performs research and development and sells such plans to their parent company Honda. Honda Research designs Honda ATCs, which are sold in Georgia and throughout the United States. Personal jurisdiction against Honda Research is proper in this Court in accordance with O.C.G.A. § 9-10-91, Georgia's Long Arm Statute. Honda Research may be served with process in accordance with Article 10(a) of the Hague Convention by this Court's issuing a second original of the Summons and Complaint, and Plaintiffs forwarding the same by Registered Mail to Honda Research at 1-4-1 Chuo Wako-shi, Saitama 351-01, Japan.

Whenever this Complaint refers to any act of "Defendants," the reference shall be deemed to mean the act of each Defendant, jointly and severally.

5.

Venue against Defendants is proper in this Court Pursuant to 28 U.S.C. §1391 as the claims arose in this judicial district and all acts complained of occurred within the Middle District of Georgia.

6.

Subject matter jurisdiction is proper in the U.S. District Court pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

## OPERATIVE FACTS

### 7.

The three-wheeled all-terrain vehicle ("ATV") was introduced in the United States under the Honda trademark of ATC (all-terrain cycle) in 1970.

### 8.

By the 1980's, a handful of major manufacturers including Defendants were selling as many as 600,000 ATVs annually in the United States.

### 9.

As early as 1981, Defendants' own representatives cautioned professional motorcyclists test-driving their ATCs to bring their shoulder pads when those professionals asked whether the three wheelers were dangerous. Defendants' internal warning was not shared publicly with the American people even though Defendants knew 65% of its principal riders were under the age of 15.

### 10.

As early as 1982, Honda warned Japanese purchasers of the Honda ATC 185S that the ATC was "a wild trike" and "body movement at high speed is the opposite of turning at low speed" and you could learn the difference "only through training and experience." This warning was not shared with the American people in the owners' manuals for the Honda 185S sold in the United States.

### 11.

Injuries and fatalities on three wheel ATVs reached a crisis level during the 1980's. The federal government, consumer advocates, doctors, and others investigated the cause of these

injuries, and most quickly concluded the three-wheel design had flaws, which made it prone to flipping over under normal operating procedures.

12.

Corporations became concerned as well about the dangers posed by the Honda ATCs. The U-Haul Corporation sought to warn its customers that the Honda ATC 200S would "corner strangely" and "ATCs flip every which way," but Defendants objected to U-Haul issuing these warnings to persons operating Honda ATCs and U-Haul decided to stop renting the Honda ATCs in 1985.

13.

Defendants and other ATV manufacturers established the Specialty Vehicle Institute of America (SVIA), and the SVIA subsequently urged Honda and other manufacturers in 1985 to make an expenditure of just $7.40 per ATV for a comprehensive safety effort but the recommendation in that cost/benefit analysis was rejected.

14.

By 1987, the largest domestic manufacturer of ATVs labeled its ATVs to warn that ATVs are for use only by adults 18 years or older. Unlike Defendants, the largest domestic manufacturer never marketed its three wheelers to children or for use by children.

15.

The threat to public safety became so severe, the Consumer Product Safety Commission (CPSC) asked a federal court in 1988 to declare ATVs to be imminently dangerous consumer products. The CPSC wanted manufacturers, including Honda, to end production of three wheel ATVs, repurchase all three wheel ATVs from dealer stock, offer financial incentives to encourage the return of three wheel ATVs by customers, and provide safety education.

16.

In the spring of 1988, a federal district court approved a negotiated consent decree between the CPSC and the industry, including Defendants.  The decree required manufacturers to cease production of new three wheel ATVs and ATCs altogether.

17.

Defendants refused to repurchase all ATCs from dealer stock.  Instead, when Defendants could no longer sell already-manufactured ATCs, Defendants gave them away to, for example, state agencies, instead of destroying those dangerous products.  Defendants claimed a tax deduction for such 'gifts.'  Defendants did not warn the recipients of such 'gifts' of the dangers known to Defendants of using the ATCs.  Defendants refused to buy back already-sold ATCs from citizens who owned them.  Thus, hundreds of thousands of dangerous three-wheeler ATVs and ATCs remain in use nationwide, and in 2001 there were 10,000 injuries from those three wheelers.

18.

The public awareness campaign and labels Defendants have been willing to offer have been a failure.  Many owners never received the new warnings or failed to attach them to the ATCs.  When owners sold those used three-wheelers, a whole new generation of children became exposed to the dangerous ATCs.  The injury rate to children under the age of 16 operating ATVs have been increasing since at least 1993.

19.

On Sunday, May 26, 2002, nine year old Benjamin Guthrie Milton was riding a 1984 Honda ATC 200S (3 wheeler), serial # JH3TB0535EC456627, while visiting his father's home

in Talbot County, Georgia.  Benjamin Guthrie Milton was riding in the yard on flat ground in close proximity to his father's house.

20.

While Guthrie Milton was riding, the Honda ATC failed to maintain its stability as it pitched forward and flipped over, ejecting Guthrie Milton over the handlebars of the vehicle. Guthrie Milton was separated from the ATC and was catastrophically injured as a result.

21.

As a proximate cause of the defects associated with the Honda ATC 200S, Guthrie Milton suffered a traumatic cervical spine injury rendering him quadriplegic, and resulting in permanent, totally debilitating and grievous physical and mental injury, shock, pain, and suffering.

22.

As a proximate cause of the grievous injuries to Plaintiff Guthrie Milton, Plaintiff Denese M. Davis incurred medical expenses for the care and treatment of her son and will continue to incur expenses.  She brings this action to recover all medical expenses that will be incurred by Guthrie Milton until he reaches the age of majority as provided for by Georgia law.

23.

Defendants designed, tested, manufactured, marketed, distributed, and sold the subject Honda ATC 200S on which Plaintiff was riding, and placed it into the stream of commerce.

24.

The subject Honda ATC 200S was defective, unreasonably dangerous, and not fit for its ordinary use when manufactured.  The designs chosen by Defendants were not reasonable, and the risks of those designs outweighed the utility of those designs, especially considering other

-8-

alternative designs existed that were available, safer, and technologically feasible, which were
not implemented by Defendants and would have prevented this incident.

25.

At the time Defendants designed, manufactured, marketed, and distributed the subject
ATC, Defendants could reasonably have foreseen and did, in fact, foresee the vehicle's
propensity to roll such as described in this Complaint.

26.

Defendants are jointly and severally liable for Plaintiffs' injuries and damages.

**COUNT ONE**

**(Strict Products Liability)**

27.

Plaintiffs incorporate herein Paragraphs 1 through 26 of this Complaint as if re-alleged in
full.

28.

Defendants are strictly liable to Plaintiffs under O.C.G.A. § 51-1-11 and other applicable
law for the injuries suffered by Guthrie Milton because the risk of rollover, serious injury and
death inherent in the design of the 1984 Honda ATC 200S outweighed any utility of the chosen
design, thereby rendering the vehicle defective and unreasonably dangerous under foreseeable
and anticipated riding conditions.  The defects in the 1984 Honda ATC 200S include, but are not
limited to, the following:

a)      The 1984 Honda ATC 200S was consciously designed and manufactured by
        Defendants in such a manner that it had an unreasonable propensity to roll over
        because of handling and stability design defects.  The vehicle is highly susceptible

-9-

to forward pitch and roll over by the slightest turning of the handlebars, causing the rider to be thrown from the vehicle.

b)     The 1984 Honda ATC 200S was designed with a fixed axle as opposed to an axle with a differential, which means that both rear tires turn and drive at the same rate at all times.  ATCs with a fixed axle (no differential) tend to plow forward in a relatively straight path making it very difficult to maneuver or steer in a predictive manner.  These vehicles will under-steer causing an operator to exaggerate turning in order to negotiate a corner or curve, thus easily contributing to the stability defects.

c)     The 1984 Honda ATC 200S was designed with a high center of gravity.  The subject ATC's center of gravity is too high and shifts with the movements of the rider causing it to quickly become unstable.

d)     The 1984 Honda ATC 200S as designed requires intensive driver participation such as leaning and shifting weight in order to compensate for the vehicle's lack of stability and allow a rider to maneuver the vehicle and react timely to avoid injuries.  This calls for riders to be experienced beyond that of the typical operator.

e)     The 1984 Honda ATC 200S does not contain, and is not accompanied by, warnings to prospective owners or users, including Plaintiffs in this case, of the unreasonable risk of physical harm associated with the negligent and defective design of the vehicle.

f)     The 1984 Honda ATC 200S does not contain, and is not accompanied by, any adequate warnings to prospective owners or users, including Plaintiffs, of the

-10-

unreasonable risk of physical harm associated with the negligent and defective design of the vehicle.

g)      The 1984 Honda ATC 200S was not adequately tested by Defendants to determine whether prospective owners and users of the 1984 Honda ATC 200S would be exposed to an unreasonable risk of physical harm due to the normal operation of the ATC under foreseeable circumstances.

h)      Defendants knew, or should have known, from testing that was performed on the Honda ATC 200S and other Honda vehicles with the same or similar design that those vehicles posed an imminent and unreasonable risk of death or severe personal injury and was a product hazard.

i)      Defendants knew, or should have known, from other real world incidents involving the Honda ATC 200S and other Honda vehicles with the same or similar design, that those vehicles as designed presented an unreasonable risk of death or severe injury related to its normal and foreseeable use.

j)      Defendants failed to implement safe, technologically feasible, and economically practical design alternatives, which would have mitigated or cured the design defects noted above.

29.

The defects of the 1984 Honda ATC 200S proximately caused the injuries, damages and losses that Plaintiffs have all suffered.

30.

But for Defendants' negligent and defective design of the Honda ATC 200S, Plaintiff Guthrie Milton would not have suffered any life threatening or life altering injuries.

-11-

31.

Defendants acted with reckless disregard for the safety and well-being of the consumer public, and acted willfully and wantonly, as defined under O.C.G.A. § 51-12-5.1, in designing, testing, manufacturing, inspecting, marketing, distributing and selling the 1984 Honda ATC 200S because they had knowledge of the risks to life and limb as described in Paragraph 28 of this Complaint when they designed, manufactured, marketed, distributed and sold the subject ATC 200S.  Such conduct warrants and demands the imposition of punitive damages against Defendants.

## COUNT TWO

### (Negligence)

32.

Plaintiffs incorporate herein Paragraphs 1 through 31 of this Complaint as if re-alleged in full.

33.

Defendants as product designers and manufacturers, owed a duty to the consuming public in general, and Plaintiffs in particular, to exercise reasonable care to design, test, manufacture, inspect, market and distribute a product that was free of an unreasonable propensity to roll over and without handling and stability defects, and to warn about such dangers and its risk of harm to owners, and users in foreseeable situations, particularly to children, of which Defendants were aware existed in the subject ATC 200S.

34.

Defendants breached their duty to exercise reasonable care to design, test, manufacture, inspect, market, distribute and sell the subject Honda ATC 200S free of unreasonable risk of

physical harm to prospective owners, and users including Plaintiffs.  Defendants breached their duty of care in a number of ways, including but not limited to the following:

a) Defendants failed to design a vehicle that did not roll over when subjected to foreseeable forces the same as or similar to those at issue in this incident. Defendants consciously designed and manufactured the 1984 Honda ATC 200S in such a manner that it is highly susceptible to forward pitch and rollover by the slightest turning of the handlebars;

b) Defendants consciously designed and manufactured the ATC 200S with a fixed axle as opposed to an axle with a differential, which causes problems with steering and maneuverability.  As designed, the ATC 200S will under-steer forcing an operator to exaggerate turning movements in order to negotiate a corner or curve and exacerbates stability defects already inherent in the vehicle due to its high center of gravity;

c) Defendants consciously designed and manufactured the 1984 Honda ATC 200S in such a manner that the center of gravity is too high and shifts with the movement of the rider causing it to quickly become unstable, especially with three-wheeled models;

d) Defendants consciously designed the ATC 200S in such a manner that it requires intensive driver participation such as leaning and shifting weight in order to allow a rider to maneuver the vehicle and compensate for the vehicle's lack of stability. This calls for riders to be experienced beyond that of the typical operator;

e) Defendants failed to provide with the 1984 Honda ATC 200S warnings to prospective owners, and users, including Plaintiffs in this case, of the

-13-

unreasonable risk of physical harm associated with the negligent and defective

design of the vehicle;

f)      Defendants failed to provide with the 1984 Honda ATC 200S any <u>adequate</u>

warnings to prospective owners, and users, including Plaintiffs, of the

unreasonable risk of physical harm associated with the negligent and defective

design of the vehicle;

g)      Defendants failed to adequately test the 1984 Honda ATC 200S to determine

whether prospective owners, and users of the 1984 Honda ATC 200S would be

exposed to an unreasonable risk of physical harm due to the normal and

foreseeable use of the vehicle;

h)      Defendants knew, or should have known, from the testing that was performed on

the Honda ATC 200S and other Honda vehicles with the same or similar design

that their vehicle would pose an unreasonable risk of injury to riders in

foreseeable operational conditions; and

i)      Defendants knew, or should have known, from other real world incidents

involving the Honda ATC 200S, and other Honda vehicles with the same or

similar design, that those vehicles as designed would cause risk of grievous injury

to a rider operating the vehicle in foreseeable conditions.  Further, that these

design defects, individually and collectively, make the ATC 200S unreasonably

dangerous to consumers and users.

35.

Defendants' actions in designing, manufacturing, promoting and selling the Honda ATC

200S were so egregious that it rises to the level of reckless disregard for the safety and well-being

-14-

of the consumer public, and constitutes willful and wanton conduct as defined under O.C.G.A. §

51-12-5.1, in designing, testing, manufacturing, inspecting, marketing, distributing and selling

the 1984 Honda ATC 200S because they had knowledge of the risks to life and limb described in

Paragraph 34 of this Complaint when they manufactured, marketed, distributed and sold the

Honda ATC 200S.  Such conduct warrants the imposition of punitive damages against

Defendants.

36.

Defendants' failure to exercise reasonable care in designing, testing, manufacturing,

inspecting, marketing, distributing and selling the 1984 Honda ATC 200S proximately caused

Plaintiffs' injuries.

**COUNT THREE**

**(Fraudulent Concealment of Defect and Wrongful
Refusal to Recall)**

37.

Plaintiffs incorporate herein Paragraphs 1 through 36 of this Complaint as if re-alleged in

full.

38.

Prior to designing, marketing, distributing, selling, and placing the 1984 Honda ATC

200S into the stream of commerce and, at all other times pertinent herein to the present day,

Defendants were aware of the dangerous and defective design of the 1984 Honda ATC 200S.

39.

Despite Defendants' knowledge of the defective design of the ATC 200S, Defendants

committed the following tortious acts and/or omissions for which they are liable:

-15-

a)   fraudulently concealing the defective design of the 1984 Honda ATC 200S and
     their knowledge of its susceptibility to cause injury to operators and users from
     normal and foreseeable use; and

b)   wrongfully refusing to recall the defectively designed vehicles despite knowledge
     of such defects.

40.

As a direct and proximate result of the tortious acts and/or omissions as set forth in
Paragraph 39, Plaintiffs suffered injuries and damages.

41.

As a direct and proximate result of the tortious acts and/or omissions as set forth in
Paragraph 39, Defendants have acted willfully, wantonly, and with an entire want of care
sufficient to raise the presumption of a conscious indifference to the consequences such that
punitive damages should be awarded to punish and deter Defendants from similar future
misconduct.

## DAMAGES AND PRAYER FOR RELIEF

42.

Plaintiffs incorporate herein Paragraphs 1 through 41 of this Complaint as if re-alleged in
full.

43.

As a direct result of the defectively designed 1984 Honda ATC 200S, Defendants'
negligence and failure to remedy or recall the subject vehicle, Plaintiff Denese Davis, as natural
guardian of Guthrie Milton, an incapacitated minor, seeks to recover all special and general
damages from all Defendants to the full extent allowable under Georgia law, including damages

-16-

for intense and debilitating physical pain and suffering caused by fractures to Guthrie Milton's cervical spine, physical disfigurement, mental anguish and suffering, and emotional damage. Also, Plaintiffs seek damages from Defendants, jointly and severally, in an amount to be determined as demonstrated by the evidence, for Guthrie Milton's past and future mental and physical pain and suffering, past and future loss of enjoyment of life, lost future earnings and decreased earning capacity.  These injuries and damages are permanent.

44.

Plaintiff Denese Davis, individually, will seek to recover economic loss for all medical, hospital, and other bills, which she is responsible to pay under Georgia law.

45.

All Plaintiffs seek punitive damages against Defendants in an amount determined to be sufficient to punish, penalize, and deter Defendants from similar future misconduct in light of the aggravated nature of their conduct and in light of their financial circumstances

WHEREFORE, Plaintiffs pray for the following relief:

1)      That summons issue requiring these Defendants to appear as provided by law to answer the allegations of this Complaint;

2)      That Plaintiffs have and recover all damages, both compensatory and punitive, to which they are entitled to recover under Georgia law; and

3)      For such other and further relief as this Court deems just and appropriate.

This _2d_ day of _October_ , 2003.

Respectfully submitted,

BUTLER, WOOTEN, FRYHOFER
   DAUGHTERY & SULLIVAN, LLP

BY: _J. E. Butler, Jr._
   J. E. Butler, Jr., P.C., GA Bar # 099625
   Peter J. Daughtery, GA Bar # 205881
   Post Office Box 2766
   105 Thirteenth Street
   Columbus, Georgia  31902
   Telephone:    (706) 322-1990
   Facsimile:    (706) 323-2962


HAGLER AND HYLES

BY: _S. Hyles by JEButler, Jr._
   Stephen Hyles, GA Bar # 381467
   Post Office Box 2055
   927 Third Avenue
   Columbus, Georgia  31902-2055
   Telephone:    (706) 324-0882
   Facsimile:    (706) 324-0839